**In re GARY L. CAIN, Debtor.**

**Gary L. CAIN, Plaintiff,**

**v.**

**THE UNITED STATES of America, Defendant.**

**Bankruptcy No. 90–53532–RBK.**
**Adv. No. 91–5125–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 29, 1992.

---

A. Ellouise Niblo, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant, the U.S.

Loren W. Peters, San Antonio, Tex., for plaintiff, Gary L. Cain.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The question in this case is whether a debtor should be permitted to file an adversary proceeding under section 505 of the Bankruptcy Code to determine income tax liability in a no asset Chapter 7 case. For the reasons stated in this opinion, the Court declines to consider the requested relief, and instead will abstain and dismiss the adversary proceeding.

Gary L. Cain (the "Debtor") filed this Chapter 7 case on November 6, 1990, as a no asset case. The Internal Revenue Service (the "IRS") held claims against the Debtor for taxes for the 1986, 1987 and 1988 tax years. The IRS did not file a proof of claim pursuant to Fed.R.Bankr.P. 3002(c)(5) presumably because the case was a no asset case. On February 8, 1991, the Debtor filed his Complaint to Determine Tax Liability Pursuant to 11 U.S.C. § 505 (the "First Complaint"). The First Complaint asserted that the assessments for the 1986 tax year were illegal and erroneous, and that the IRS did not properly give the Debtor the required statutory notice of deficiency.

The Debtor received his discharge on February 26, 1991, and the case was closed by the Bankruptcy Clerk on March 15, 1991. Thereafter, on June 20, 1991, the Debtor commenced this adversary proceeding by filing a Second Complaint to Determine Tax Liability Pursuant to 11 U.S.C. § 505 (the "Second Complaint"). The Second Complaint repeated the allegations of the First Complaint, but was based on the 1987 and 1988 tax years. The parties filed a joint motion for continuance and consolidation. The two adversary proceedings were consolidated into this adversary proceeding and set for trial. At that time, the IRS was apparently unaware that the bankruptcy case had been closed.

The IRS filed a proof of claim for the three tax years on August 30, 1991. The proof of claim was accepted for filing by the Clerk although the bankruptcy case had been previously closed. After the IRS attempted to file an amended proof of claim in November, 1991, the proof of claim was returned to the IRS by the Bankruptcy Clerk with a letter stating that the claim could not be filed because the case had been closed. Upon receipt of the letter, the IRS became aware that the case was closed and filed its motion to dismiss or abstain in this adversary proceeding on December 2, 1991. No motion to reopen the bankruptcy case has been filed.

I. Status of adversary proceeding in a closed bankruptcy case.

The Debtor is seeking to go forward in this consolidated adversary proceeding to determine tax liability under section 505 of the Bankruptcy Code despite the closing of the underlying bankruptcy case. Generally, an adversary proceeding does not survive the closing of the bankruptcy case under which it was filed. *In re Rush,* 49 B.R. 158, 161 (Bankr.N.D.Ala.1985). There is contrary authority, however, which concludes that a properly filed adversary proceeding may have an independent life after the closing of the bankruptcy case. *Funket v. Beacon Consumer Discount Co. (In re Funket),* 27 B.R. 640, 643 (Bankr. M.D.Pa.1982); *Diversified Mortgage Investors v. Lake Tahoe Land Co. (In re Lake Tahoe Land Co.),* 12 B.R. 479, 481 (Bankr. D.Nev.1981). Nothing in the Bankruptcy Code prohibits the continuation of jurisdiction over an adversary proceeding arising under Title 11, or arising in or related to a bankruptcy case following the dismissal or closing of the bankruptcy case. *Hudak v. Woods,* 91 B.R. 718, 720 (W.D.Pa.1988).

II. Subject matter jurisdiction over "arising under" and "related to" matters.

Interpretation of the terms "arising under" and "related to" is essential in determining subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 157 & 1334 (1988). The legislative history indicates that even after a bankruptcy case is closed, jurisdiction continues in order for the bankruptcy court to hear proceedings concerning claims and controversies arising under Title 11. *Gagel v. Kingston–Greene Partners (In re GWF, Inv.),* 85 B.R. 771, 780 (Bankr.S.D.Ohio 1988). As stated in the legislative history:

> The use of the term "proceeding," though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, ... the existence of prohibited post-bankruptcy discrimination, ... and so on. The bankruptcy courts will be able to hear these proceedings because they arise under title 11.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6400. "Arising under" Title 11 has been defined as "any proceeding that would not occur but for a Bankruptcy Code provision." *Van Huffel Tube Corp. v. A & G Indus. (In re Van Huffel Tube Corp.),* 71 B.R. 155, 156 (Bankr.N.D.Ohio 1987). "Related to" has been defined as "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987), *on remand,* 84 B.R. 432 (S.D.Miss.1988). There is no indication in the legislative history that bankruptcy jurisdiction continues for "related to" matters not concerned with the enforcement of rights directly granted under Title 11. Some case law suggests, however, that if extenuating circumstances are present, jurisdiction over a "related to" proceeding may be justified following the closing of the bankruptcy case. *Stardust Inn, Inc. v. Doshi (In re Stardust Inn, Inc.),* 70 B.R. 888, 890–891 (Bankr.E.D.Pa.1987); *Auto Auction, Inc. v. Pocklington (In re Pocklington),* 21 B.R. 199, 202–203 (Bankr. S.D.Cal.1982).

In this case, the proceeding to determine tax liability is not unique to the Bankruptcy Code. The Debtor could have brought an action to dispute the deficiency assessments in the United States District Court in a suit for a refund, or in the United States Tax Court, but the Debtor was unable to pay the taxes and sue for a refund and

missed the time for filing a tax court petition. Because this adversary proceeding is not an action that would not occur but for a Bankruptcy Code provision, it does not fall into the category of a proceeding "arising under" Title 11. This Court has jurisdiction, therefore, only if this proceeding is "related to" the underlying bankruptcy case and extenuating circumstances are present.

■ In instances in which the bankruptcy court has retained jurisdiction over "related to" adversary proceedings after the bankruptcy case has been closed, extenuating circumstances were present. *See Stardust Inn* (adversary proceeding had gone to trial without the court's knowledge of the dismissal of the bankruptcy case); *Pocklington* (dismissal would prejudice creditor's attempt to recover collateral and the court had already received testimony). As a practical matter, the bankruptcy court in this instance is the only available forum because the debtor can no longer contest his tax liability in the United States Tax Court, and he does not have the funds to pay the taxes and file suit for a refund. Thus, extenuating circumstances justify retention of bankruptcy jurisdiction in this adversary proceeding.

III. Abstention and dismissal.

■ Pursuant to section 505(a)(1) of the Bankruptcy Code, the bankruptcy court may determine the amount and legality of any tax owed by the debtor. The purpose of this statute was to provide a forum for the rapid determination of claims so that disputed tax claims would not delay conclusion of the administration of the bankruptcy estate. *Millsaps v. United States (In re Millsaps)*, 133 B.R. 547, 554 (Bankr. M.D.Fla.), *approved*, 138 B.R. 87 (M.D.Fla. 1991); *In re Diez*, 45 B.R. 137, 139 (Bankr. S.D.Fla.1984). *Millsaps* involved a similar situation in which the debtors contested a nondischargeable tax debt in their no asset Chapter 7 bankruptcy case. As stated in *Millsaps*:

> Here the trustee is not seeking a determination of the amount of these taxes in the process of administering the estate. Instead, it is the debtors who are contesting the amount of a non-dischargeable

debt. Although Congress extended jurisdiction to the bankruptcy court to determine the debtors' personal tax liability under Section 505(a)(1), the debate in the House of Representatives leading to the passage of this section clearly shows that, when there is no need for a determination of the amount of the tax for estate administration purposes, Congress did not intend or foresee that the bankruptcy court would be the forum for this litigation. The drafters explained the section this way:

> If a tax authority decides not to file a claim for taxes which would typically occur when there are few, if any, assets in the estate, normally the tax authority would also not request the bankruptcy court to rule on the debtor's personal liability for a non-dischargeable tax. Under the House amendment, the tax authority would then have to follow the normal procedures in order to collect a nondischargeable tax. For example, in the case of nondischargeable Federal income taxes, the Internal Revenue Service would be required to issue a deficiency notice to an individual debtor, and *the debtor could then file a petition in the Tax Court—or a refund suit in a district court—as the forum in which to litigate his personal liability for a non-dischargeable tax.* (Emphasis added).

124 Cong.Rec. H11095, H11110–H11111 (1978).

This portion of the House debate anticipates precisely the situation presented here. The Service did not file a claim; there were no assets administered in this Chapter 7 case; and there will be no distribution from the estate to the Service or to any other creditor. As a result, this controversy as to the amount of 1982 taxes has no effect on creditors generally; it involves only the debtors and the Internal Revenue Service. For these obvious reasons, the trustee has no interest in the matter and has not sought any relief. The principal policy reasons for giving this court the authority to

determine this dispute are not present in this case.

133 B.R. at 554–555.

As in *Millsaps*, this Court is persuaded that discretionary abstention under 28 U.S.C. § 1334(c)(1) is appropriate. The Debtor had his opportunity to contest the taxes through the administrative procedures of the Internal Revenue Service, the United States Tax Court and the United States District Court. This Court agrees with the analysis in *Millsaps* that unless this Court abstains in these circumstances, every taxpayer could ignore Internal Revenue Code requirements for disputing tax liability, and then after the fact attempt to obtain a judicial determination in bankruptcy court. This result should not be tolerated unless the interests of the creditors would be furthered and the creditors should not be penalized by the pre-petition acts of the Debtor. As stated in *Diez:*

> Without any question, this court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, with certain exceptions not pertinent here. § 505(a)(1). However, the history of this proviso makes it clear that its purpose was to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate ... That purpose has no application in this no-asset case involving no parties other than the debtor and the I.R.S.

*In re Diez*, 45 B.R. 137, 139 (Bankr. S.D.Fla.1984) (citations omitted).

IV. Conclusion.

Although this Court is willing to retain jurisdiction of the adversary proceeding as a "related to" matter despite the closing of the underlying bankruptcy case, the Court is unwilling to allow the Debtor-taxpayer to ignore IRS administrative procedures and then years later come into bankruptcy court and attempt to obtain a judicial determination which the taxpayer elected not to seek on a timely basis. Such a determination could have no effect on any creditor and would benefit only the Debtor. In these circumstances, the Court should abstain and dismiss this adversary proceeding.

This Opinion shall constitute the findings of fact and conclusions of law of this Court pursuant to Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a). A separate order will be entered dismissing the adversary proceeding.