In re Emery H. HEINE and Marian L. Heine, Debtors.

Bankruptcy No. 485–00419–PKE.

United States Bankruptcy Court, D. South Dakota, S.D.

May 15, 1992.

John Harmelink, Yankton, S.D., for debtors.

Doug Kettering, Yankton, S.D., for Farm Credit Services.

## CASE SUMMARY

PEDER K. ECKER, Bankruptcy Judge.

This issue in this proposed sale of real property free and clear of liens is whether sale proceeds from one tract of real property that exceed the assigned, stipulated value agreed upon by Debtors and Farm Credit Services (FCS) must be applied toward FCS's remaining claim secured by other tracts of real property and personal property when FCS separated its secured claim into five separate loans: one for personal property and four for each tract of real property, simply for Debtors' convenience, but when the Court approved the stipulation which states, "The Debtors shall retain the right to prepay all or any portion of this claim at any time."

The Court determines that the evidence is too weak to satisfy a sale free and clear of liens under 11 U.S.C. § 363(f)(3), but if the aggregate value of all liens against the property do not exceed the sale price, then the sale may occur free and clear of liens. Also, the sale can be authorized pursuant to 11 U.S.C. § 363(f)(5) since FCS could be compelled under both legal and equitable proceedings to accept full money satisfaction of its stipulated interest in the real property. FCS's lien, to the extent it is secured by the real property to be sold, is adequately protected through attachment of sale proceeds to the extent of the stipulated value of the real property. Therefore, any proceeds realized in excess are not required to be applied to the remaining claim.

## FINDINGS OF FACT

1. On March 25, 1987, Debtors and FCS signed a stipulation and agreement pertaining to, inter alia, plan treatment of FCS's secured claim. Some of the important highlights of this agreement include:

• The full amount of FCS's claim on petition date, November 18, 1985, was $1,154,132.31, secured by personal property and four tracts of real property. For purposes of the stipulation, each tract of land and the personal property were listed, described, and valued separately by the parties. Apparently, FCS's claim was divided in this fashion so that if Debtors missed an annual payment, the resulting default would not trigger a surrender of all of the property.

• The property at issue, known as Beaver Creek Farm, was valued at $200,000, less $5,000 for Nebraska real estate taxes. This is also the agreed value, or amount, of the mortgage held by FCS against Beaver Creek Farm.

• The stipulation provided that for plan purposes, FCS's entire secured claim would be amortized over thirty years at ten percent interest. Based upon a combined, stipulated value of $758,000 for all real and personal property, the plan required thirty annual payments of $80,407.90. Debtors have made these annual payments since 1987.

• The stipulation stated that Debtors *may repay all or any portion of FCS's claim* at any time.

• Four separate warranties corresponding to the separate tracts of land mortgaged to FCS were delivered in escrow on or before the date of plan confirmation and then deeded to FCS. Similarly, a bill of sale for personal property was delivered on or before plan confirmation.

• The parties intended the stipulation "to be a fair, equitable and binding agreement which the parties intend to serve as a full and final agreement as to the matter of repayment. . . ."

2. On June 3, 1986, the Court signed an order establishing the value of real and personal property and declared FCS to have a first valid and subsisting mortgage lien in the personal and real property.

3. On May 14, 1987, the parties amended the stipulation, but ratified and approved in all respects the stipulation of March 25, 1987.

4. On December 5, 1987, the Court signed an order confirming Debtors' Chapter 11 plan of reorganization and granted Debtors a discharge.

5. On July 19, 1990, Debtors filed a notice of proposed action to pay off the real estate mortgage as it concerned one tract of real property known as Hill Farm. Objection was filed by Production Credit Association of the Midlands ("PCAM") stating that although the stipulation provided for prepayment privileges, there was no obligation for PCAM to release collateral of even value. Subsequent to a hearing before this Court, a complete pay-off payment was rendered to FCS, calculated from the stipulated value of Hill Farm.

6. On August 13, 1990, the Court signed an order allowing Debtors to pay the mortgage lien held by FCS against the Hill Farm and requiring FCS to satisfy its mortgage lien against Hill Farm.

7. On March 10, 1992, Debtors filed a Notice of Proposed Sale of Property Free and Clear of Liens as it concerned a second tract of real property known as Beaver Creek Farm. The notice indicates that proceeds from the sale will be paid to FCS according to the agreed value of the farm, plus interest, less any payments already made. Proceeds will also be used to pay all real estate taxes. In return, FCS will be required to satisfy its mortgage lien against Beaver Creek Farm.

8. On March 26, 1992, FCS filed an objection to the proposed sale, asserting its contention that any agreed-upon property values inserted in the stipulation were simply provided for Debtors' convenience and any sale proceeds received in excess of Beaver Creek Farm's stipulated value should be distributed to reduce the remaining claim secured by the remaining two tracts of real property and personal property.

## CONCLUSIONS OF LAW

### A. The Question of Jurisdiction

As a preliminary matter, FCS challenges the Court's jurisdiction to resolve this issue. The basis for its argument is that since the 1987 confirmation of Debtors' Chapter 11 plan of reorganization, Debtors have continued to operate their farm and make annual payments according to the terms of the confirmed plan, which means that the plan "has been substantially consummated." For this reason, FCS believes there is a "want of jurisdiction" to hear this proceeding.

The Court notes that the proposed sale of Beaver Creek Farm, pursuant to the terms of the stipulation, is the second effort to sell an individual tract of land and to have FCS satisfy a mortgage lien secured by one of four individual tracts of land. The first sale was Hill Farm in 1990. The Court was properly involved in that proceeding, without jurisdictional challenge, and is now properly involved again.

The law provides that United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). The proposed sale of Beaver Creek Farm free and clear of liens is certainly a matter that has arisen under and is related to Debtors' Chapter 11 bankruptcy case. Therefore, this Court has jurisdiction. Moreover, it was by order of this Court that the stipulation was approved;

therefore, this Court is in the best position to interpret its provisions. Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner. Requests for bankruptcy courts to construe their own orders must be considered to arise under Title 11 if the policies underlying the Code are to be effectively implemented. *Post v. Ewing*, 119 B.R. 566 (S.D.Ohio 1989), *citing Beneficial Trust Deeds v. Franklin*, 802 F.2d 324, 326 (9th Cir.1986). Even though neither the stipulation nor the order approving the stipulation has specific language retaining this Court's jurisdiction, that fact will not be construed as an election to forego the right to return to this Court, especially in light of the federal statute cited above. A proceeding to sell real property free and clear of liens pursuant to 11 U.S.C. § 363(b) and (f) is a core proceeding, and in a core proceeding arising in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(a) and (b)(2)(F). Accordingly, this matter rests on this Court's core jurisdiction.

### B. The Issue in *Dewsnup v. Timm*

FCS believes this case presents an issue similar to the one decided by the United States Supreme Court in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The issue in *Dewsnup* is whether 11 U.S.C. § 506(d) allows a debtor to "strip down" a creditor's real property lien, fully allowed under 11 U.S.C. § 502, when there is a judicial determination that the value of the property is less than the allowed amount of the claim secured by the lien. *Id.* 112 S.Ct. at 775. In other words, does a reduced valuation of real property that secures a lien correspondingly reduce a claim allowed under Section 502? The Supreme Court held no and justified its conclusion by stating that a creditor's lien should be kept in place up to the time of foreclosure and any increase in property value at the time of foreclosure should accrue to the mortgagee, rather than becoming a windfall to the defaulting debtor

or becoming a benefit to other unsecured creditors. *Id.* at 778.

The issue in *Dewsnup* concerns a strip down of an allowed secured lien due to a judicially determined reduction in land value. The issue in this proceeding is not similar to *Dewsnup*. To parallel the *Dewsnup* issue, FCS might try to characterize the issue as whether a creditor may "beef up" its lien against real property to the full amount of proceeds realized when sale proceeds exceed the amount of the secured claim and the value of the real property as stipulated to by the parties. But even that formulation of the issue, incorrect as it is, is completely different from that ruled upon in *Dewsnup*. The notice to sell Beaver Creek Farm is not an effort to adjust the amount of FCS's lien. That figure was stipulated to by the parties and is not being reduced. Nor is this a proceeding that involves a condition of foreclosure. These are just some of the distinguishable facts that make the Supreme Court's recent ruling inapplicable here.

The determination to be made here is whether the property may be sold free and clear of liens and, if so, does the stipulation require excess proceeds to be applied against the remaining secured lien.

### C. The Code Requirements for a Sale "Free and Clear of Liens"

Debtors filed notice of the proposed sale pursuant to 11 U.S.C. § 363(b) and (f). Pursuant to 11 U.S.C. § 363(b), a trustee may sell property outside of the ordinary course of business upon proper notice and opportunity to hear objections. This provision has been satisfied; Debtors propose to sell Beaver Creek Farm not for business reasons, but for personal reasons, i.e., their advanced ages. Proper notice was provided and objections were heard. Subsection (f), however, is more applicable in this case, since FCS has a lien on the property to be sold. *See In re General Bearing Corp.*, 136 B.R. 361 (Bankr.S.D.N.Y.1992) (authorization to sell property may only be allowed under either Subsection (b) or (f), but not both). Subsection (f) states that a sale

under Subsection (b) may be free and clear of an interest only if:

1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2. such entity consents;
3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4. such interest is in bona fide dispute; or
5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The conditions in Section 363(f) are written in the disjunctive, so only one of the five conditions must be met for authority to sell property free and clear of liens. 2 L. King, *Collier on Bankruptcy* ¶ 363.07 at 363–32.1 (15th ed. 1983); *State of Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768, 778 (8th Cir.1981); *In re Dundee Equity Corp.*, 1992 WL 53743 (Bankr.S.D.N.Y. Mar. 6, 1992).

■ The first subsection is not met since nonbankruptcy law would not permit the sale of Beaver Creek Farm free and clear of FCS's lien. Generally, the rule is that absent consent of the lienholder, the sale should not be held if it will not produce a surplus, unless there is a bona fide dispute concerning the validity of the lien. 2 L. King, *Collier on Bankruptcy* ¶ 363.07 at 363–32.1 (15th ed. 1983). In this case, FCS has objected to the sale of Beaver Creek Farm based upon the fact that the mortgage against Beaver Creek Farm would only be satisfied in a minimal amount of $195,000. Since there is no dispute regarding the validity of the lien held by FCS, the only remaining avenues allowing a sale free and clear of liens are Subsections (f)(3) and (f)(5).

■ In order to satisfy Subsection (f)(3), the aggregate value of all liens against Beaver Creek Farm must not exceed the price at which the property in question is to be sold. *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 240–41 (6th Cir.1987); *Matter of Stroud Wholesale, Inc.*, 47 B.R. 999 (E.D.N.C.1985); *In re Wing*, 63 B.R. 83

(Bankr.M.D.Fla.1986); *In re Red Oak Farms, Inc.*, 36 B.R. 856 (Bankr.W.D.Mo. 1984). The Court is only aware of FCS's lien on Beaver Creek Farm, so, presumably, this is the only lien against the property. The only remaining question pertains to the value of FCS's lien against Beaver Creek Farm. While some courts believe that the term "value" in Subsection (f)(3) does not necessarily mean the face amount of the creditor's lien, this Court holds that in this case, "value" as used in 11 U.S.C. § 363(f)(3) *is* synonymous with amount. *See In re Oneida Lake Development, Inc.*, 114 B.R. 352 (Bankr.N.D.N.Y.1990). The parties in this case agreed that the face amount of FCS's lien against Beaver Creek Farm was $200,000. The Court approved this stipulation. Thus, in order to sell the real property free and clear of liens under this subsection, Debtors must obtain a price not less than the amount of FCS's current lien. The only evidence Debtors have produced to indicate that the auction sale price will be greater than the aggregate value of all liens held against this property is in the notice of proposed sale, which indicates that after the sale the full principal balance plus accrued interest from December 15, 1991, will be paid to satisfy FCS's mortgage. This evidence is weak.

■ Subsection (f)(5) authorizes a sale of property free and clear of liens if the lienors can be compelled to accept a money satisfaction for their liens. 11 U.S.C. § 363(f)(5); *In re Wing*, 63 B.R. at 85. A determination of how "money satisfaction" is interpreted will determine whether Subsection (f)(5) applies. *Id.* If it requires *full* money satisfaction, then a sale free and clear of liens cannot be approved unless the lienholder is paid the full amount of his interest. Debtors indicate that FCS will be paid the full amount of the stipulated lien interest. *See Matter of Stroud Wholesale, Inc.*, 47 B.R. at 1002–03 (court held that meaning of "money satisfaction" requires full money satisfaction in liquidation cases only, not rehabilitation cases). In the alternative, equitable considerations may allow a court to approve a sale free

and clear of liens even though the creditors receive less than full satisfaction of their interests. *Id.* at 1003; *In re Wing,* 63 B.R. at 85; *In re Hunt Energy Co., Inc.,* 48 B.R. 472 (Bankr.N.D.Ohio 1985).

 In this case, the Court concludes that equity was intended when the parties signed the March 25, 1987, stipulation. In the stipulation, the parties agreed that the value of the Beaver Creek Farm would be $200,000. Further, the parties agreed to allow Debtors to pay any or all of FCS's secured claim at any time. The unambiguous meaning of this phrase entitles Debtors to pay whatever amount they desire, whenever they desire. However, for the Court to authorize the sale of Beaver Creek Farm free and clear of liens, the amount of FCS's lien must not exceed the selling price. Therefore, the stipulated amount of FCS's lien must be satisfied before FCS is required to satisfy its mortgage lien. This is no different than the Court's ruling concerning the sale of Hill Farm in 1990.

The stipulation is silent, however, as to any proceeds realized in excess of the stipulated terms. The provision simply gives a privilege of prepayment for any amount. Therefore, the Court finds that Debtors are not required to apply excess proceeds realized, if any, to the remaining amount of the secured claim. The parties agreed that Beaver Creek Farm would secure FCS's entire lien to the extent of $200,000. Therefore, Debtors may go forward with a sale free and clear of liens, provided that the sale price is not less than the current amount of liens against the property.

## CONCLUSION

The Court concludes that Debtors' evidence is too weak to satisfy a sale free and clear of liens under 11 U.S.C. § 363(f)(3). Nonetheless, the Court concludes that the sale of Beaver Creek Farm free and clear of liens can be authorized pursuant to 11 U.S.C. § 363(f)(5) since FCS could be compelled under both legal and equitable proceedings to accept full money satisfaction of its stipulated interest in Beaver Creek Farm. Adequate protection is at the heart of 11 U.S.C. § 363(f), and in most instances,

adequate protection will be met by allowing the lienholder's interest to attach to sale proceeds. 11 U.S.C. § 363 "Historical and Revision Notes" at 102. FCS's lien, to the extent it is secured by Beaver Creek Farm, is adequately protected through an attachment of sale proceeds to the extent of the stipulated value of real property in question.

An appropriate order will be entered.

## ORDER APPROVING SALE FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363(b) AND (f)

The above-entitled matter having come before this Court, the Honorable Peder K. Ecker, Bankruptcy Judge, presiding, on April 23, 1992, for hearing on Debtors' Notice of Proposed Sale of Property Free and Clear of Liens pursuant to 11 U.S.C. § 363(b) and (f); and the Court having taken this matter under advisement; it is hereby

ORDERED that a sale of Beaver Creek Farm may occur free and clear of liens provided that the aggregate value of all liens against Beaver Creek Farm does not exceed the sale price; and it is further

ORDERED that upon receipt of full money satisfaction of Farm Credit Services' lien against Beaver Creek Farm as stipulated between the parties, Farm Credit Services is required to satisfy its mortgage lien against Beaver Creek Farm. Last, it is

ORDERED that pursuant to the Letter Decision entered this date, Debtors are not required to apply excess sale proceeds realized from the sale of Beaver Creek Farm, if any, to the remaining amount of Farm Credit Services' secured claim.